UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAR LEVON WOODMORE,

               Petitioner,

v.

JEFF TANNER,

               Defendant.

_____/

Case No. 2:24-cv-11138

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND DENYING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS

Jamar Lavon Woodmore, confined at the Macomb Correctional Facility in Lenox Township, Michigan, seeks the issuance of a writ of habeas corpus under 28 U.S.C. § 2254. In his pro se application, Woodmore challenged his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), carrying a concealed weapon without a license, Mich. Comp. Laws § 750.227, possession of a firearm as a felon, Mich. Comp. Laws § 750.224(f), and possession of a firearm in the commission of a felony. Mich. Comp. Laws § 750.227b. For the reasons stated below, the Court will deny Woodmore's application for a writ of habeas corpus.

## BACKGROUND

The material facts from Woodmore's conviction are gleaned from the Michigan Court of Appeals' opinion in his case. *See People v. Woodmore*, No. 347252, 2022 WL 3568648, at \*1–3 (Mich. Ct. App. Aug. 18, 2022). The facts as stated in that opinion are presumed to be correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Shimel v.*

1

*Warren*, 838 F.3d 685, 688 (6th Cir. 2016). For the sake of brevity, the Court will recite only the facts necessary to support its conclusions, but otherwise adopts as true the facts recited by the Michigan Court of Appeals.

On June 28, 2018, Woodmore shot and killed Leon Webb at the barber shop where both men worked. Before the shooting, Woodmore arrived at the barber shop (he was not scheduled to work that day) and appeared upset. Webb and Woodmore went outside of the shop and engaged in a verbal and physical altercation. The men stopped fighting, Webb returned to the shop, and Woodmore sat in his car. A few minutes later, Woodmore grabbed a pistol, reentered the store and initiated a shootout with Webb. Woodmore shot Webb thirteen times, killing him. Woodmore then fled the scene in his car and got in an accident on the way to the hospital. He did not tell the officers who responded to the crash that he had been involved in an incident. Later, on July 4, 2018, the State invited Woodmore to participate in a lineup, and he declined.

At trial, the State called three eyewitnesses to the fight and subsequent shooting. All three supported the above-described narrative. The State also introduced, *inter alia*, video evidence, forensic evidence relating to the gun shells, cell phone records, and forensic evidence relating to the victim's gunshot wounds. The State referenced Woodmore's refusal to participate in a lineup and the fact that he never claimed self-defense until trial. Woodmore testified in his own defense and claimed that he re-entered the store to recover his personal belongings and then shot

the victim in self-defense because the victim threatened his life. *See generally People v. Woodmore*, No. 347252, 2022 WL 3568648, at *1–3 (Mich. Ct. App. Aug. 18, 2022).

Woodmore was found guilty, and the state court of appeals affirmed that conviction. *Id.*, *leave to appeal denied* 988 N.W.2d 761 (Mich. 2023). Here, Woodmore sought a writ of habeas corpus for two reasons. First, he argued that his trial counsel was ineffective for failing to object and failing to present evidence. Second, he argued that the evidence was insufficient to support his conviction. ECF 1, PgID 21.

### LEGAL STANDARD

28 U.S.C. § 2254(d) imposes the following standards for federal habeas review of state court cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court: (1) arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or (2) confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

An "unreasonable application" occurs when "a state court decision unreasonably applies [Supreme Court precedent] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11. The state court must instead have behaved unreasonably. Thus, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

I.   Ineffective Assistance of Counsel

   *A. The* Strickland v. Washington *standard on § 2254 review*

On direct appeal or review of a judgment, a defendant must satisfy a two-prong test to show that he was denied the effective assistance of counsel guaranteed by the Constitution. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To do so, the defendant must overcome a strong presumption that counsel's behavior fell within the wide range of reasonable professional assistance; sound trial strategy does not fall outside that range. *Id.* 689. Second, the defendant must show he was prejudiced by the unreasonable behavior—that is, that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

But under § 2254(d)(1), a "doubly deferential judicial review" applies to a *Strickland* claim brought on collateral attack by a habeas petitioner. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Thus, the appropriate inquiry "'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### B. *Failure to Object to Line-up Questions*

First, during Woodmore's cross-examination, the prosecutor asked him about his refusal to participate in a live line-up and his failure to state to anyone before trial that he acted in self-defense. Defense counsel did not object to either line of questioning. *Woodmore*, 2022 WL 3568648, at *10. Woodmore's position is that his counsel was ineffective because the questions infringed on his Fifth Amendment right against self-incrimination. ECF 1, PgID 29.

The state courts concluded first that the Fifth Amendment is not implicated by a defendant's appearance in a lineup. *People v. Woodmore*, 2022 WL 3568648, at *10. Next, the Michigan Court of Appeals concluded that Woodmore took the prosecutor's line of questions about his failure to inform the police that he shot the victim in self-defense out of context. Because the prosecutor's questions, when put in their proper context, referred to Woodmore's pre-arrest silence, the court concluded that they were

5

proper. *Id.* at *10–11. Because both lines of questioning were proper, the court concluded that defense counsel's performance was not deficient. *Id.*

*The Lineup.* The Fifth Amendment privilege against self-incrimination applies only to compelled incriminating communications that are testimonial in character, and thus does not prohibit requiring a person to exhibit physical characteristics. *See United States v. Hubbell*, 530 U.S. 27, 34–35 (2000). The Fifth Amendment therefore does not prevent a defendant from being compelled to stand up in a physical lineup. *United States v. Wade*, 388 U.S. 218, 221–23 (1967); *see also United States v. Harris,* 660 F.3d 47, 52 (1st Cir. 2011).

Because the Fifth Amendment is not implicated by a criminal defendant's appearance in a lineup, evidence of a defendant's refusal to appear in a lineup does not violate his right against self-incrimination. *O'Brien v. Wainwright*, 738 F.2d 1139, 1143 (11th Cir. 1984); *Swanigan v. Rivard*, No. 11-cv-11833, 2012 WL 6642791, at *1 (E.D. Mich. Dec. 20, 2012); *see also United States v. Bullard*, 37 F.3d 765, 768–69 (1st Cir. 1994) ("Since [Defendant] had no such right [to refuse to stand in a lineup], then to draw inference of guilt from his refusal to cooperate physically does not place improper pressure on him to surrender a protected right."). Accordingly, counsel was not ineffective for failing to object to the prosecutor's references to Woodmore's refusal to participate in a line-up because the questions were proper.

*Pre-arrest silence.* The prosecutor's questions and comments regarding Woodmore's silence were aimed primarily if not totally at his pre-arrest silence. Prosecutors in a criminal trial may use a defendant's pre-arrest silence as substantive

evidence of his guilt so long as the defendant did not expressly invoke his or her right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183–84, 191 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014).

Woodmore did not contest that he failed to inform the Dearborn Police that he shot the victim in self-defense after he had been involved in the car accident on his way to the hospital. *Woodmore*, 2022 WL 3568648, at *3. And Woodmore had not been given a *Miranda* warning at that time because he was not under arrest.  Because it was permissible for the prosecutor to introduce evidence of Woodmore's pre-arrest silence, counsel was not ineffective for failing to object to the admission of this evidence. *Abby*, 742 F.3d at 228.

*Post-arrest silence.* The prosecutor arguably crossed the line by asking whether Woodmore ever mentioned his version of the events "until today" or in the "139 days since" the shooting. *Woodmore*, 2022 WL 3568648, at *10. Some of that period was undisputedly after Woodmore's arrest, and prosecutors generally cannot comment on a defendant's post-arrest, post-*Miranda* silence.[1] *United States v. Tarwater*, 308 F.3d 494, 511 (6th Cir. 2002). Regardless, Woodmore would not be entitled to relief on his ineffective assistance claim for two independent and alternative reasons.

First, in light of the overwhelming evidence of Woodmore's guilt, as discussed in greater detail when addressing Petitioner's sufficiency-of-the-evidence claim, *post*, counsel's failure to object to any references to Woodmore's post-arrest, post-*Miranda*

---

[1] For the sake of analysis, the Court will assume as the Michigan Court of Appeals did that that the arresting officers *Mirandized* Woodmore. *Woodmore*, 2022 WL 3568648, at *11.

silence did not prejudice Petitioner. *See Moreland v. Bradshaw*, 699 F.3d 908, 929 (6th Cir. 2012). The evidence of Woodmore's guilt—three eyewitness accounts, video tying him to the scene, forensic analysis, etc.—was overwhelming.[2]

Second, the Michigan courts concluded that the prosecutor's questioning was aimed at Woodmore's pre-arrest silence—that is, his failure to tell the Dearborn Police at the time of his car accident that he had just shot someone in self-defense. So, the prosecutor's summary question about Woodmore's failure to inform anyone at any time prior to trial that he had shot the victim in self-defense was at worst a brief, oblique reference to Woodmore's post-*Miranda* silence.

The fleeting nature of the reference does not necessarily save the constitutionality of the prosecutor's conduct. *See Tarwater*, 308 F.3d at 511 (stating the general rule). But it does bolster the possibility that counsel may have made the strategic decision not to object to any indirect references to Woodmore's post-*Miranda* silence. Had counsel objected, the court would have instructed the jurors to ignore Petitioner's post-*Miranda* silence—which may have branded the post-arrest silence in the jurors' minds. *See Robinson v. United States*, 625 F. App'x 721, 724 (6th Cir. 2015). Woodmore's counsel "thus faced a choice: say nothing and hope the jury missed the passing reference, or object and thereby risk that the instructional cure would be worse than the disease. Counsel's decision not to object was thus a permissible tactical judgment." *Id.*

C. *Failure to Present Evidence*

---

[2] This point applies with equal force to all of Woodmore's ineffective-assistance claims.

Woodmore next argued that trial counsel was ineffective for failing to present and investigate evidence. ECF 1, PgID 36, 39.

*Photographs*. Woodmore argued that defense counsel should have introduced photographs of his facial injuries to the jury to show that he had been pistol whipped by the victim. That evidence, he supposed, would have bolstered his claim of self-defense.[3] ECF 1, PgID 36.

At a post-trial evidentiary hearing conducted pursuant to *People v. Ginther*, 390 Mich. 436 (1973), Woodmore's trial counsel explained why he did not present evidence of Woodmore's facial injuries. In his view, because Woodmore suffered the injuries during the initial fistfight with the victim, the injuries undermined the self-defense theory. *Woodmore*, 2022 WL 3568648, at *4. The fight outside—when Woodmore and the victim were battering each other—was minutes before the shooting. That timing, in counsel's view, would tend to suggest to a jury that Woodmore's injuries provided a motive for the shooting rather than support for self-defense. *Id.*

_____

[3] Under Michigan law, a person acts lawfully in self-defense if he honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482, 456 N. W. 2d 10 (1990)). The defendant need also have believed that his actions were immediately necessary, and the defendant could not have been the initial aggressor. *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608–09 (E.D. Mich. 2002) (internal citations omitted). Even then, a defendant is not entitled to use any more force than is necessary to defend himself, *id.* at 609, and a person involved in mutual combat may have a duty to retreat if it is safely possible to do so before using deadly force. *See People v. Reese*, 491 Mich. 127, 815 N.W.2d 85 (2012).

The trial judge denied Woodmore's post-trial motion for a new trial, finding that counsel's decision not to seek admission of the photographs of Petitioner's alleged injuries was a reasonable strategic decision for the reasons stated by counsel. *Id.* at *11. The Michigan Court of Appeals agreed. *Id.*

The Michigan courts reasonably concluded that trial counsel's failure to present photographs of Woodmore's facial injuries from the initial altercation with the victim was valid trial strategy. Even in Woodmore's telling he got hit by the pistol during the initial "tussling." *Id.* at *2. Then he returned to his car for a couple of minutes before he returned with his gun to the barbershop, re-confronted the victim, and ultimately shot him. *Id.* at *1–3 The photographs of Woodmore's facial injuries from the initial confrontation may not have assisted his self-defense claim because the victim was no longer threatening or assaulting him when he decided to reenter the store. Moreover, given that the government presented evidence that Woodmore shot the victim thirteen times (including four times in the back), *id.* at *8, the injuries may have suggested, as counsel feared, that Woodmore was seeking retribution rather than acting in self-defense.

Counsel was not ineffective for failing to present photographs of Woodmore's facial injuries because the photographs could have at best offered only marginal support for Woodmore's self-defense claim and at worst could have hurt him. *See Vinton v. Nolan*, No. CIV.A. 04-10209, 2005 WL 562760, *14–15 (D. Mass. Mar. 8, 2005). Petitioner is not entitled to relief on the claim.

10

*Phone Records.* Woodmore also argued that his counsel should have investigated and admitted phone records to show that he attempted to call 911 with one of his phones, even though he did not connect with the dispatcher. ECF 1, PgID 39. The Michigan Court of Appeals rejected the claim:

> At the *Ginther* hearing, defense counsel Polk also explained that he did not attempt to get the phone records for defendant's second cell phone because defendant never actually reported the shooting incident even if he had called 911. Defense counsel's reasoning was sound and did not fall below an objective standard of reasonableness. *See id*. Defendant had claimed that after the fistfight and after sitting in his vehicle, he determined that he had to go back inside the barbershop to retrieve his cell phone and hair clippers. That was the reason he did not immediately leave the barbershop to go to the hospital for stitches he claimed were required after the fistfight. If the jury was apprised that defendant had another cell phone, it might undermine this testimony. And the fact remained that defendant did not report the shooting incident even if he did call 911, which could be construed as evidence of defendant's consciousness of guilt. Defense counsel['s] decision not to seek the admission of defendant's cell phone records was a reasonable trial strategy under the circumstances.

*Woodmore*, 2022 WL 3568648, at *12.

Woodmore is not entitled to relief on his cell-phone-records claim because trial counsel's decision was reasonable for the reasons stated by the Michigan Court of Appeals. Once Woodmore testified about needing his phone so much that he reentered the store instead of seeking medical care, it could have hurt his credibility if the jury learned that he had another phone available. Petitioner is not entitled to habeas relief on his ineffective-assistance-of-counsel claims.

II.     Sufficiency of the Evidence

Woodmore also argued that the evidence presented at his trial was insufficient to support his conviction for first-degree murder. He argued that there was

11

insufficient evidence of premeditation or deliberation and insufficient evidence that he did not act in self-defense. ECF 1, PgID 45–46, 48–49.

### A. Standard of Review

"The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court should not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19 (citation and footnote omitted).

And once again, a federal court cannot overturn the state court's rejection of a sufficiency-of-the-evidence claim simply because the federal court disagrees with the state court's conclusion. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). Indeed, for a federal court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

### B. Premeditation

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002). Woodmore argues first that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree murder.

The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson*, 159 F. Supp. 2d at 596 (citing *People v. Anderson*, 209 Mich. App. 527, 537 (1995)). Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. *Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 537.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 586, 594–95 (E.D. Mich. 2002) (quoting *People v. Vail*, 393 Mich. 460, 469 (1975)). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson*, 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). And use of a lethal weapon will support an inference of an intent to kill. *Id.*

There was sufficient evidence for a rational trier of fact to conclude that Woodmore acted with premeditation and deliberation when he shot the victim. The State introduced competent evidence of the following facts all of which supported a finding of premeditation and deliberation: Woodmore had been engaged in an argument and a physical confrontation with the victim prior to the shooting, *see Scott,* 302 F.3d at 603; Woodmore retrieved a firearm from his car and re-entered the barbershop to shoot the victim after minutes passed, *see People v. Taylor*, 133 Mich. App. 762, 764–65 (1984); Woodmore fired multiple gunshots, *see Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014); Woodmore shot the victim in the back, *see Young v. Withrow,* 39 F. App'x 60, 62 (6th Cir. 2002); Woodmore did not seek medical help for the victim, *see DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir. 1998); and Woodmore fled the scene. *See Marsack v. Howes*, 300 F. Supp. 2d 483, 491–92 (E.D. Mich. 2004).

The Court cannot say that state court's decision regarding the insufficiency-of-evidence claim was contrary to or involved an unreasonable application of *Jackson.* Even only "[a] few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt*, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence

14

eliminates every other reasonable theory except that presented by the prosecution."
*Titus v. Jackson*, 452 F. App'x 647, 650 (6th Cir. 2011).

    *C.   Self-Defense*

    Woodmore also claimed that there was insufficient evidence to prove that he was not acting in self-defense. ECF 1, PgID 43. His argument fails for two reasons: (1) it is unavailable on habeas review, and (2) there was sufficient evidence.

    *Availability of Woodmore's Argument on Habeas Review.* Woodmore's claim is not cognizable on habeas review. *See Hayes v. Horton*, 596 F. Supp. 3d 978, 989 (E.D. Mich. 2022). Self-defense is an affirmative defense under Michigan law. *See People v. Dupree,* 486 Mich. 693, 704, 712 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.' " *People v. Reese*, 491 Mich. 127, 155, n.76 (2012) (quoting *Dupree,* 486 Mich. at 704 n.11). Although Michigan law requires a prosecutor to disprove a claim of self-defense beyond a reasonable doubt once raised, *see People v. Watts*, 61 Mich. App. 309, 311 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been *constitutionally* required." *See Smith v. United States,* 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)) (emphasis added).

    In *Allen v. Redman*, 858 F.2d 1194 (6th Cir. 1988), the Sixth Circuit explained that if a state elects to shift the burden to itself to disprove an affirmative defense but does not make disproval of the defense an element of the offense, habeas petitioners cannot argue that the State did not introduce sufficient evidence on the

defense. *Id.* at 1197. Essentially, "a state may elect to carry the burden of proof with respect to a properly raised defense while insulating that portion of its case from habeas corpus review by expressly not designating the lack of the affirmative defense as an element of the crime." *Id.* at 1198. Put simply, if non-self-defense "is not an element [of the crime,] habeas corpus review is precluded." *Id.* Woodmore's claim that the prosecutor failed to disprove his affirmative defense is thus not cognizable on habeas review. *Id.* at 1200; *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999); *Hayes v. Horton,* 596 F. Supp. 3d at 990.

*Sufficiency of the Evidence.* Even if Woodmore's claim was cognizable, he would not be entitled to habeas relief. The Michigan Court of Appeals reasonably concluded that the evidence, when viewed in a prosecution-friendly light, was sufficient for a rational trier of fact to reject Woodmore's self-defense claim. *See Woodmore*, 2022 WL 3568648, at *7–8. The prosecution witnesses testified that the victim and Petitioner engaged in a brief fistfight outside the store. None of them saw the victim pistol whip Woodmore or use the gun in any way against him. After that brief altercation, the victim went back into the barbershop and Petitioner went to his car and sat there several minutes before going back into the store to confront the victim, who was cutting a young child's hair at the time. Woodmore fired thirteen shots at the victim, including four in the back. Woodmore took no steps to retreat or otherwise avoid the victim after the initial fistfight. *Id.* at *1–2.

All of that evidence provided a basis to conclude that Petitioner would no longer have reasonably perceived himself to be in imminent danger of death or serious

bodily injury and that the force employed by him was excessive. Considering the evidence, a reasonable factfinder could find beyond a reasonable doubt that Woodmore did not honestly and/or reasonably fear that he was in imminent danger of death or serious bodily harm from the victim and that he used far more force than necessary to defend himself. *See Johnigan*, 207 F. Supp. 2d at 609.

To be sure, Woodmore testified that he acted in self-defense. But the jury could have reasonably decided to give more credit to the other evidence, which, if believed, was sufficient to rebut Woodmore's self-defense claim. *See Wooten v. Warren*, 814 F. App'x 50, 60 (6th Cir. 2020). Petitioner is not entitled to relief.

## III.   Certificate of Appealability

Under 28 U.S.C. § 2253, before a petitioner may appeal a decision of the Court, the Court must determine if petitioner is entitled to a certificate of appealability. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). The Court must either issue a certificate indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). "The district court must issue or deny a certificate of

17

appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Mr. Woodmore has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). So, the Court will not grant a certificate of appealability. The Court will also deny Petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that that the petition for a writ of habeas corpus [1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability and leave to appeal in forma pauperis are **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 2, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 2, 2025, by electronic and/or ordinary mail.

s/ R. Loury
Case Manager

18